Garry, J.
Plaintiff Terri Guimond (hereinafter plaintiff) tripped and fell on a raised area of pavement on the approach to a pedestrian bridge over the Ausable River in the Village of Keeseville, Essex County.[1] Plaintiff and her husband, derivatively, commenced this action seeking damages for her injuries. Following discovery, defendants moved for summary judgment dismissing the *896 complaint. Supreme Court granted the motions and, after granting plaintiffs’ subsequent motion for reargument, adhered to its previous order. Plaintiffs appeal from both orders.
It is undisputed that defendants met their initial burden of establishing that they did not receive prior written notice of the alleged defect, thus shifting the burden to plaintiffs to raise issues of fact as to the applicability of an exception to the written notice requirement (see Stride v City of Schenectady, 85 AD3d 1409, 1410 [2011]; Gagnon v City of Saratoga Springs, 51 AD3d 1096, 1097 [2008], lv denied 11 NY3d 706 [2008]). Plaintiffs assert that they met this burden by establishing that there are triable issues of fact as to whether defendants “created the defect or hazard through an affirmative act of negligence” (Amabile v City of Buffalo, 93 NY2d 471, 474 [1999]; accord Westbrook v Village of Endicott, 67 AD3d 1319, 1320 [2009]). In this regard, they submitted the report of an expert engineer and land surveyor. This expert opined that the raised area where plaintiff fell was an asphalt patch that had been applied to the bridge approach to cover cracks and buckling in its paved surface, and that this raised patch produced an uneven walking surface that proximately caused plaintiffs fall.[2] Contrary to defendants’ assertion, this expert opinion plainly states that the dangerously raised surface was created as soon as the patch was applied; nothing in the report indicates or implies that the hazard changed or evolved over time. Accordingly, we find that this report presented triable issues of fact as to whether the application of the asphalt patch “immediately result[ed] in the existence of a dangerous condition” that caused plaintiffs accident (Yarborough v City of New York, 10 NY3d 726, 728 [2008] [internal quotation marks and citations omitted]; see Herzog v Schroeder, 9 AD3d 669, 671 [2004]).
Defendants further contend that even if plaintiffs successfully established that someone performed a repair that affirmatively created a dangerous condition, plaintiffs have not shown that this was done by either defendant. Both defendants deny that they performed the repairs in question; further, each defendant claims that it is not responsible for maintaining or repairing the bridge approach, and that the other defendant bears that responsibility. The Clerk and Treasurer for defendant Village of Keeseville testified that the bridge is owned by defendant *897 County of Essex, but that she does not know who owns the bridge approach or is responsible for maintaining it. She acknowledged that the Village is responsible for maintaining— and does maintain — a dirt path or right-of-way that connects the bridge approach with a nearby paved village street. Further, she testified that the Village immediately repaired the bridge approach after plaintiffs accident by replacing the asphalt pavement with a poured concrete sidewalk; thereafter, the Village sought but did not receive reimbursement for this cost from the County. We note that while evidence of such a subsequent repair is inadmissible to prove negligence, it is admissible where, as here, there are issues of control or maintenance (see Del Vecchio v Danielle Assoc., LLC, 94 AD3d 941, 942 [2012]; Hughes v Cold Spring Constr. Co., 26 AD3d 858, 859 [2006]; DeRoche v Methodist Hosp. of Brooklyn, 249 AD2d 438, 439 [1998]; O’Callaghan v Walsh, 211 AD2d 531, 532 [1995]). Finally, the County submitted a survey revealing that the bridge approach lies wholly within the marked boundaries of a village street.[3] Accordingly, there are issues of fact as to whether the Village owns the bridge approach and has the authority and responsibility to maintain it.
As for the County, the Superintendent of the Department of Public Works testified that the County owns the bridge in question as well as a number of other bridges. He averred, however, that under the County’s past practice, responsibility for maintaining the approaches to these bridges belongs to the town, village or other municipality in which the approach is located and not to the County. He further stated that the County’s maintenance responsibilities are limited to the “structure” of its bridges, which he defined as “[a]ny component that would lend itself to holding the bridge up, spanning whatever the bridge is intended to span.” In the case of the bridge where plaintiff was injured, he testified that these components included the bridge’s beams, cables and metal deck, but did not include the bridge approach. We note, however, that plaintiffs’ expert stated that the bridge approach — like the bridge — is supported by steel beams on five-foot centers, that the area where plaintiff fell is directly above one of these beams and that expansion and contraction of this beam caused the cracks that eventually required the patching that caused plaintiffs fall. The expert further opined that the approach was part of the bridge and an *898 “integral part of the bridge structure.” Given this opinion and the Superintendent’s acknowledgment that the County is responsible for bridge beams and structural components, we cannot state, as a matter of law, that the approach is not part of the bridge and, thus, not within the County’s maintenance responsibilities (compare Carbonelli v City of Amsterdam, 197 App Div 848, 852 [1921]; Kolacki v State of New York, 136 Misc 239, 240 [Ct Cl 1930], affd 246 App Div 466 [1935], affd 272 NY 482 [1936]).
As defendants argue, plaintiffs have not produced any direct evidence that either the County or the Village performed the patching that plaintiffs’ expert says caused plaintiff’s injury. Notably, however, neither defendant produced written policies, repair logs, inspection reports or other documentation — other than the survey — to support their respective claims; both deny that any pertinent records exist and rely exclusively upon the testimony of their officials. The pertinent facts are entirely outside plaintiffs’ knowledge and within the exclusive knowledge of the parties moving for summary judgment — a circumstance in which summary judgment is inappropriate (see Budik v CSX Transp., Inc., 88 AD3d 1097, 1098 [2011]; Tenkate v Moore, 274 AD2d 934, 935 [2000]; Kelly v LeMoyne Coll., 199 AD2d 942, 943-944 [1993]; Zwart v Town of Wallkill, 192 AD2d 831, 833-834 [1993]). In the absence of direct evidence, plaintiffs are forced to rely solely on circumstantial evidence to oppose defendants’ summary judgment motion — that is, the inference that, given the claim of each defendant that the other bears responsibility for maintaining the bridge approach, and the dearth of evidence that any other entity has such responsibility or authority, one of them must have performed the repairs that allegedly caused plaintiffs accident (compare Hinkley v Village of Ballston Spa, 306 AD2d 612, 612-613 [2003]).[4] In these circumstances, “ [although plaintiffs clearly will bear the burden of proof on the issue at trial, they raised sufficient issues of fact in the context of [these] summary judgment motion[s] to warrant having the circumstantial evidence and defendants’ credibility concerning the [creation of the defect] tested by cross-examination and assessed by the trier of fact” (Tenkate v Moore, 274 AD2d at 936 [citation omitted]; see Budik v CSX Transp., Inc., 88 AD3d at 1098; David D. Siegel, Practice Commentaries, *899 McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:19 at 28). Accordingly, defendants’ motions for summary judgment should have been denied.
Peters, P.J., Rose and McCarthy, JJ., concur. Ordered that the orders are reversed, on the law, without costs, and motions for summary judgment denied.

. The other side of the bridge lies in the County of Clinton, which was also originally joined as a defendant; all claims against it were later discontinued by stipulation.

. Although the expert also stated that asphalt should not have been used as the underlying pavement on the bridge approach due to its flexibility, plaintiffs do not assert that the original use of asphalt pavement — as opposed to the later application of asphalt patches — immediately created a dangerous condition.

. We disagree with the County that this survey definitively excludes the County from responsibility. Notably, the survey reveals that part of the metal bridge deck — which the County admits that it owns and maintains — lies within the boundaries of the same village street.

. Contrary to the Village’s claim, plaintiffs’ speculative deposition testimony as to other municipalities that might be responsible for the bridge approach did not constitute affirmative claims against any of these municipalities, but, read in context, merely indicated that plaintiffs did not know who bore this responsibility.